**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Janel Russell Designs, Inc.,

Plaintiff,

v.

TPS Associates LLC; Helene Borg; and Martin Borg,

Defendants.

Civil No. 09-835 (DWF/JJK)

**MEMORANDUM OPINION AND ORDER**

---

James T. Nikolai, Esq., and Peter G. Nikolai, Esq., Nikolai & Mersereau, counsel for Plaintiff.

Bradley D. Hauswirth, Esq., John D. Schrager, Esq., and Laura Jo Busian, Esq., Wagner, Falconer & Judd, Ltd.; Norman Hanfling, Esq., Norman Hanfling & Associates, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Defendants TPS Associates LLC ("TPS"), Helene Borg, and Martin Borg. For the reasons stated below, the Court grants the motion in part and denies the motion in part.

## BACKGROUND

Plaintiff Janel Russell Designs, Inc. is a jewelry design firm that owns the copyright in a jewelry design known as the "Mother & Child." (Compl. ¶ 8.) Plaintiff commercialized jewelry incorporating the Mother & Child design including a

heart-shaped derivation of the Mother & Child design. (*Id*. ¶¶ 8, 11.) Plaintiff exclusively licenses the right to distribute Mother & Child jewelry to Kirchner Corporation. (*Id*. ¶ 30.)

Carla Corporation is a former licensee of Plaintiff that was authorized to manufacture and distribute heart-shaped Mother & Child jewelry products. (Compl. ¶ 26.) With Plaintiff's permission, Carla Corporation engaged TPS as a licensing agent. (*Id*.) Plaintiff contends that both Carla Corporation and TPS were aware that they were not authorized to sell the Mother & Child jewelry to Wal-Mart stores. (*Id*.) The Carla Corporation-TPS agreement expired on August 31, 2008. (*Id*.)

In March 2005, JRD Licensing, Inc. and TPS entered into a Licensing Agent Agreement (the "Agreement").[1] (Compl. ¶ 13, Ex. G.) Pursuant to the Agreement, TPS was granted "the exclusive right to represent [JRD Licensing] throughout the United States . . . with respect to the commercialization or licensing of the Property to third party DISTRIBUTORS." (*Id*. ¶ 13, Ex. G at ¶ 1A.) "Property" under the Agreement is limited to the "concept/property generally described in the attached Schedule A." (*Id*. at 1.) Schedule A, in turn, identifies properties owned by Plaintiff, including product categories incorporating the Mother & Child and other designs. With respect to the Mother & Child design, Schedule A provides:

[1] JRD Licensing, Inc. was created to arrange for the licensing of Janel Russell's designs to third-parties. (Compl. ¶ 12.) After the execution of the Agreement, JRD Licensing's assets and contracts were transferred to Plaintiff. (Compl. ¶ 15.)

> There are exclusive agreements in place with Kirchner Corp., Carla Corp. and Colibri Group for the product category of jewelry. This property is available for all other product categories *outside of jewelry*.

(Compl. ¶ 13, Ex. G, Schedule A at 1 (emphasis added).)

The Agreement also contains an arbitration clause that provides:

> All disagreements, claims, or controversies arising out of or relating to this Agreement, whether during or after its term or any extensions thereof, shall be resolved by arbitration in Minneapolis, Minnesota in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect.

(*Id.* ¶ 12.)

Plaintiff alleges that after the Carla Corporation-TPS agreement expired, and despite not being authorized to commercialize and distribute Mother & Child jewelry under the Agreement, Defendants distributed sterling silver heart-shaped Mother & Child jewelry products. (Compl. ¶¶ 18, 29, 43, Exs. J-N.) For example, Plaintiff alleges that TPS sold Mother & Child jewelry to Wal-Mart. (*Id.* ¶ 28.) In addition, Plaintiff alleges that TPS falsely holds itself out as an authorized dealer of Mother & Child jewelry and has wrongly indicated that the jewelry was created or manufactured by TPS. (*Id.* ¶¶ 32, 34.) In its Complaint, Plaintiff alleges six causes of action: copyright infringement, unfair competition and false advertising under 15 U.S.C. § 1125(A), violation of the Minnesota Deceptive Trade Practices Act (Minn. Stat. § 325D.44), common law unfair competition, declaration of termination of the Agreement, and breach of fiduciary duty.[2]

---

[2] Plaintiff's claim for declaratory judgment is supported by allegations that

(Footnote Continued on Next Page)

## MEMORANDUM

### I. Motion to Dismiss

Defendants submit that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). In particular, Defendants assert that this Court lacks subject matter jurisdiction over Plaintiff's claims and that Plaintiff fails to state a claim, because the action is governed by a valid arbitration clause.

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id*. In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit

---

(Footnote Continued From Previous Page)
Defendants failed to provide billing reports and to find, conclude, and service advantageous business arrangements, as required under the Agreement. Plaintiff's breach of fiduciary duty claim is supported by allegations that Defendants acted in a manner contrary to Plaintiff's interest, failed to make complete disclosures in royalty reports,
(Footnote Continued on Next Page)

from the safeguards of Rule12(b)(6). *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls

---

(Footnote Continued From Previous Page)
infringed Plaintiff's Mother & Child design, and engaged in false advertising.

for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Arbitration Clause

When considering a motion to compel arbitration, the Court is required to determine whether: (1) a valid agreement to arbitrate exists between the parties; and (2) the specific dispute is within the scope of that agreement. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

The Contract contains an arbitration provision that reads:

> All disagreements, claims, or controversies arising out of or relating to this Agreement, whether during or after its term or any extensions thereof, shall be resolved by arbitration in Minneapolis, Minnesota in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect.

(Compl. ¶ 13, Ex. G at ¶ 12.) The parties do not dispute that the Agreement contains an arbitration clause or that it is valid. In addition, there is no dispute that Counts Five and Six of the Complaint fall within the scope of the arbitration clause.[3] The issue before the Court is whether Counts One through Four of Plaintiff's Complaint (Plaintiff's tort claims) fall within the scope of the Agreement's arbitration clause. In making that determination, the Court is mindful of the strong federal policy in favor of arbitration and that doubts as to the parties' intentions should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The

[3] Plaintiff concedes that Counts Five and Six should be dismissed without prejudice
(Footnote Continued on Next Page)

Court is also, however, aware that "[w]hile ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted). Arbitration is a matter of contract and a party who has not agreed to arbitrate a dispute cannot be forced to do so. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

Defendants assert that the allegations contained in Counts One through Four arise from the Agreement and the relationship created thereunder, and therefore that those counts fall within the scope of the arbitration agreement. Plaintiff asserts that Counts One through Four relate to the Defendants' unauthorized distribution of jewelry and that because jewelry is specifically excluded from the scope of the Agreement, the Agreement's arbitration clause does not apply.

The Court concludes that the scope of the arbitration clause does not include Counts One through Four of Plaintiff's Complaint. The arbitration clause in the Agreement covers "[a]ll disagreements, claims, or controversies arising out of or relating to this Agreement." (Compl. ¶ 13, Ex. G at ¶ 12.) The Agreement authorizes TPS to commercialize certain property, but expressly provides that it does *not* cover or authorize the commercialization of Mother & Child jewelry. Plaintiff's tort claims all relate to the

---

(Footnote Continued From Previous Page)
so that the parties can pursue those claims in arbitration.

Defendants' alleged unauthorized copying and distribution of jewelry incorporating Plaintiff's copyrighted Mother & Child design. Thus, these claims do not fall within the scope of the Agreement and do not arise out of the Agreement.[4] In addition, the Court determines that Counts One through Four do not relate to the Agreement. First, the parties clearly intended that the Agreement would not pertain to the commercialization of Mother & Child jewelry. Second, Plaintiff's tort claims can all be brought and maintained without reference to the Agreement. For these reasons, the Court concludes that, under the plain language of the Agreement, Plaintiff did not intend to arbitrate tort claims that relate to the Defendants' alleged unauthorized distribution of Mother & Child jewelry.

Defendants contend that in Counts One through Four Plaintiff alleges that Defendants exceeded the license grant contained in the Agreement by distributing Mother & Child jewelry. Defendants argue, therefore, that those counts arise out of or relate to the Agreement. The Court disagrees. While it is true that if there was no Agreement, there would be no license grant for Defendants to exceed, it is also true that if there was no license grant, Plaintiff could still sue Defendants for any unauthorized distribution of

---

[4] For example, in Count One, Plaintiff asserts that Defendants are copying Plaintiff's copyrighted works and distributing infringing copies in violation of Copyright laws; in Count Two, Plaintiff asserts that Defendants have used in commerce a false designation of origin by indicating that TPS is the authorized manufacturer and distributor of the heart-shaped Mother & Child jewelry; in Count Three, Plaintiff alleges that Defendants' use of the designation "Mother and Child Heart by TPS Associates" is likely to cause confusion as to source; and in Count Four, Plaintiff alleges common law unfair

(Footnote Continued on Next Page)

their copyrighted Mother & Child jewelry designs. The Court reiterates that Mother & Child jewelry was specifically excluded from the Agreement and that disputes regarding the unauthorized distribution of Mother & Child jewelry are not covered by the Agreement's arbitration clause.

Defendants also assert that but for the relationship between Plaintiff and TPS created by the Licensing Agreement, Plaintiff's claims would not have arisen. Again, the Court disagrees. Plaintiff has alleged that TPS was a party to a separate now-expired agreement with Carla Corporation, under which TPS was licensed to distribute Mother & Child jewelry. Therefore, it is not apparent that Plaintiff's claims would not have arisen but for the Agreement. Instead, it is possible that Plaintiff's claims are the result of TPS continuing to distribute Mother & Child jewelry under an expired agreement with Carla Corporation.

## III. Motion to Stay

Because the Court has determined that Counts One through Four are not subject to the arbitration agreement, they will not be dismissed. The Court has, however, dismissed Counts Five and Six and must therefore determine whether or not to stay the remaining nonarbitrable tort claims pending the outcome of arbitration. This determination is "soundly vested in the District Court's discretionary authority to control its docket." *Simtar Entm't, Inc. v. Silva Entm't*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999). The Court

---

(Footnote Continued From Previous Page)
competition.

concludes that Plaintiff's tort claims can proceed independently from Plaintiff's declaratory judgment and breach of fiduciary duty claims. While there may be some overlap between the allegations supporting each of the claims, Counts One through Four relate primarily to Defendants' alleged unauthorized distribution of Mother & Child jewelry, while Counts Five and Six are supported primarily by distinct allegations of Defendants' breach of the Agreement and breach of fiduciary duty. It also appears that Plaintiff's tort claims predominate over the arbitrable claims. The best way to facilitate resolution of this matter is to allow the tort claims to go forward rather than to wait for a yet-to-be scheduled arbitration of the remaining claims. Accordingly, the Court declines to stay the nonarbitrable claims.

## IV. Individual Liability

Defendants assert that Helene Borg and Martin Borg conducted business with Plaintiff as agents of TPS and that there is no basis for claims against them in their individual capacities. Specifically, Defendants assert that Helene Borg is the Chief Executive Officer of TPS and has held herself out to Plaintiff as operating TPS, that all business conducted with Plaintiff was by TPS, and that Helene Borg executed the Agreement in her representative capacity as an officer of TPS. Defendants further assert that Martin Borg was a consultant working for TPS, held himself out as consultant, and is not a party to the Agreement in his individual capacity.

Plaintiff, on the other hand, asserts that all of the defendants are jointly and severally liable under Counts One through Four. In particular, Plaintiff asserts that TPS is

merely the alter ego of Helene Borg and Martin Borg and that it would be unjust to allow them to avoid liability behind the shield of TPS. Plaintiff asserts that TPS's only shareholder is Helene Borg, and its only "independent consultant" is Martin Borg, and that Helene Borg and Martin Borg collectively control TPS such that when a party is dealing with TPS, they are dealing with the Helene Borg and Martin Borg. Plaintiff further asserts that both Helene Borg and Martin Borg knowingly infringed Plaintiff's Mother & Child copyright. Alternatively, Plaintiff asserts that if the Court accepts that Martin Borg is an "independent contractor," then he may be individually liable for copyright infringement.

The Court declines to dismiss Helene Borg and Martin Borg from this action at this time. The Court is not satisfied that it can make a determination on the record before it as to the issue of their individual liability. The Court will entertain a future motion once the record is developed and this issue is more thoroughly briefed by the parties.

**CONCLUSION**

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. 3) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Counts Five and Six are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is ordered to submit these claims to arbitration in accordance with the Agreement.

b. Defendants' motion is **DENIED** in all other respects.

Dated: October 1, 2009

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge